UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DARRELL LAMONT THORNTON,

      Petitioner,

v.                         Case No. 3:18-cv-762-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Darrell Thornton, an inmate of the Florida penal system,
initiated this action on June 8, 2018,[1] by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1), with a memorandum of law
(Memorandum; Doc. 2). In the Petition, Thornton challenges a 2010 state court
(Clay County, Florida) judgment of conviction for attempted second-degree
murder, battery, robbery with a deadly weapon, carjacking, and second-degree
arson. Thornton raises eight grounds for relief. See Memorandum at 2-21.[2]
Respondents have submitted a memorandum in opposition to the Petition. See

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the
Court's electronic docketing system.

Answer to Petition for Writ of Habeas Corpus (Response; Doc. 19) with exhibits (Resp. Ex.). Thornton declined to file a brief in reply. See Doc. 23. This case is ripe for review.

## II. Relevant Procedural History

On April 6, 2009, the State of Florida (State) charged Thornton by way of Information with attempted first-degree murder with a weapon (count one), kidnapping with a weapon (count two), armed robbery (count three), carjacking (count four), and second-degree arson (count five). Resp. Ex. A at 7-8. Following a trial,[3] a jury convicted Thornton of attempted second-degree murder, a lesser included offense of count one; battery, a lesser included offense of count two; robbery with a deadly weapon; carjacking; and second-degree arson. Id. at 33-35. The circuit court sentenced Thornton to a term of incarceration of fifteen years in prison as to counts one and five, thirty years in prison as to counts three and four, and one-year in jail as to count two. Id. at 180-87. The circuit court ordered each count to run concurrently with the others. Id. at 187.

Thornton appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Id. at 192. With the assistance of counsel, Thornton argued in his initial brief that: (1) there was insufficient evidence to establish that he used a deadly weapon, (2) the circuit court erred in failing to

---

[3] Thornton was tried alongside his co-defendant in front of two separate juries. Resp. Ex. B.

instruct the jury on the offense of grand theft of a motor vehicle, and (3) his convictions for armed robbery and carjacking violated the Double Jeopardy Clause. Resp. Ex. C. The State filed an answer brief. Resp. Ex. D. The First DCA stayed the appeal pending the resolution of an issue before the Florida Supreme Court. Resp. Ex. G. Following the resolution of that issue, the First DCA lifted the stay and directed the State to show cause why Thornton's conviction for attempted second-degree murder should be not be reversed. Resp. Ex. H. The State conceded Thornton's conviction on that count should be reversed and the case remanded. Resp. Ex. I. On September 10, 2014, the First DCA reversed the conviction and sentence for attempted second-degree murder and remanded the case for a new trial on that count. Resp. Ex. J. In all other aspects, the First DCA affirmed Thornton's convictions and sentences without further explanation. Id. The Mandate issued on September 29, 2014. Resp. Ex. K. On remand, the State entered a nolle prosequi as to the attempted second-degree murder charge. Resp. Ex. L.

On June 11, 2015, Thornton filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, Resp. Ex. N, which he later voluntarily dismissed on July 23, 2015, Resp. Exs. P; Q. On November 5, 2015, Thornton again filed a pro se motion for postconviction relief (Rule 3.850 Motion). Resp. Ex. R at 4-24. In the Rule 3.850 Motion, Thornton alleged that his trial counsel was ineffective for failing to: (1) adequately argue a motion

for judgment of acquittal; (2) request a jury instruction on grand theft; (3) adequately argue a motion for judgment of acquittal; (4) object to the prosecutor's closing arguments; and (5) object to an increased penalty without the proper jury finding. <u>Id.</u> The circuit court denied the Rule 3.850 Motion. <u>Id.</u> at 57-70. Thornton appealed; however, the First DCA initially dismissed the appeal as untimely. Resp. Exs. W; X; Z. Thornton filed a petition for belated appeal, Resp. Ex. BB, which the First DCA ultimately granted, Resp. Ex. EE. On May 9, 2018, the First DCA per curiam affirmed the denial of relief on the Rule 3.850 Motion, Resp. Ex. JJ, and on June 6, 2018, it issued the mandate, Resp. Ex KK.

On August 1, 2016, Thornton filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion). Resp. Ex. LL at 5-8. The circuit court dismissed the Rule 3.800(a) Motion without prejudice. <u>Id.</u> at 11-12. Thornton appealed, and on February 28, 2017, the First DCA per curiam affirmed the dismissal without a written opinion. Resp. Ex. NN. The First DCA issued the Mandate on March 28, 2017. Resp. Ex. OO.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Thornton's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.

2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

7

> courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

> 748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S.
> Ct. 2497. A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes federal
> review of the claims if, among other requisites, the
> state procedural rule is a nonfederal ground adequate
> to support the judgment and the rule is firmly
> established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558
> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally defaulted
> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may

be excused under certain circumstances. Notwithstanding that a claim has

been procedurally defaulted, a federal court may still consider the claim if a

state habeas petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied

---

[6] Wainwright v. Sykes, 433 U.S. 72 (1977).
[7] Murray v. Carrier, 477 U.S. 478 (1986).

fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting

Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."

> Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially

> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Thornton alleges his counsel was ineffective for failing to adequately argue a motion for judgment of acquittal. Memorandum at 2-4. Specifically, he contends that his counsel should have argued that there was insufficient evidence to qualify the BB gun or object used to stab the victim as a deadly weapon. <u>Id.</u> According to Thornton, the victim, James Waters, testified at trial that he got hit in the back of the head and when he turned to see what hit him, he saw Thornton standing over him with what he thought

was a gun, but what was later determined to be a BB gun. Id. at 2-3. Waters also testified that Thornton stabbed him several times, but he was unable to identify the weapon Thornton used to stab him and police never recovered it. Id. As the only evidence of the use of these weapons came from Waters and Waters was unable to specifically identify which weapon caused his injuries, Thornton contends that his counsel should have argued that there was insufficient evidence to establish his use of a deadly weapon during the commission of the robbery. Id. at 3-4.

Thornton raised a similar claim in his Rule 3.850 Motion. Resp. Ex. R at 6-8. The circuit court denied relief, explaining:

> "In moving for judgment of acquittal, a defendant admits (1) facts stated in evidence and (2) conclusions favorable to the adverse party." Cahours v. State, 147 So. 3d 574, 577 (Fla. 1st DCA 2014) (citing Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)). Thus, a "judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party." Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006) (citing Lynch, 293 So. 2d at 45).
>
> To establish a prima facie case for Robbery With a Deadly Weapon, the State must introduce evidence that (1) Defendant, or a person he was principal with, took money or other property from Waters or Waters' custody, (2) force, violence, assault, or putting in fear was used in the course of the taking, (3) the property taken was of some value, (4) the taking was with the intent to permanently or temporarily deprive Waters of his right to the property or any benefit from it, and (5) Defendant, or a person he was principle with, used

16

a deadly weapon in the course of committing the robbery." See Fla. Stat. § 812.13 (2009), Fla. Std. Jury Instr. (Crim.) 15.1 (2009). The statute does not define "deadly weapon." However, the standard jury instructions, which was given in this case, defines "deadly weapon" as a weapon "used or threatened to be used in a way likely to produce death or great bodily harm." Now, whether a weapon is a "deadly weapon" is a factual question to be answered by the jury." See Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997).

Here, Waters was struck across the back of his head with what Waters believed was a gun. Waters fell to the floor, was "extreme [sic] dizzy," and experienced ringing in his ears. Defendant threatened Waters by pointing the BB gun at Waters. The BB gun was introduced as evidence for the jury's consideration.

Further, Defendant and Co-defendant stabbed Waters numerous times in his ear, head, throat, and shoulder with an unidentified object. From those injuries Waters received stitches in his ear, behind his ear, on his lower jaw, and on his back. Additionally, at the time of the trial, Waters testified that he still had lingering injuries from the attacks, including scars, pain in his ears, and numbing pain in his shoulders.

The Court finds there was competent, substantial evidence to submit to the jury for its consideration on whether the BB gun, unidentified object, or both was a deadly weapon. Therefore, the Court finds that Defendant fails to demonstrate that counsel's performance was deficient or that there was a reasonable probability that the outcome of the proceedings would have been different presuming counsel's performance was deficient. Therefore, Defendant is not entitled to relief on Ground One.

Id. at 61-63 (record citations and footnote omitted). The First DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Exs. JJ; KK.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground One is without merit. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see

---

[8] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). Pursuant to section 812.13(2)(a), Florida Statutes, if during the commission of a robbery the offender "carried a firearm or other deadly weapon," then the robbery is a first-degree felony punishable by life. The statute does not define deadly weapon, but the Florida Supreme Court has stated that "'[a] 'deadly weapon' has generally been defined to be one likely to produce death or great bodily injury,'" and "'[w]hether or not the weapon involved is to be classed as 'deadly' is a factual question to be resolved by the jury under appropriate instructions.'" Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997) (quoting Goswick v. State, 143 So. 2d 817, 820 (Fla. 1962)).

Regarding Thornton's use of the BB gun, such a weapon can be a deadly weapon under Florida law, depending on the evidence presented at trial. Id. Moreover, "when used as a bludgeon, a BB gun may qualify as a 'deadly weapon.'" K.C. v. State, 49 So. 3d 841, 843 (Fla. 4th DCA 2010) (citations omitted). Here, although Waters did not see what Thornton struck him with, he did testify that Thornton was only carrying the BB gun, which Waters thought was a real gun at the time, and that the pain he felt did not feel like a punch from a fist. Resp. Ex. B at 217-19, 294, 300-01. Additionally, Thornton

19

stated that the hit knocked him to the ground, made him dizzy, and affected his memory. Id. On this record, there was competent, substantial evidence supporting an inference that the BB gun was used as a bludgeon. See K.C., 49 So. 3d at 843. As such, this evidence, when taken in a light most favorable to the State, created a reasonable inference that the BB gun could cause great bodily injury.

Likewise, even though Waters could not identify the object used to stab him, the evidence showed that Waters was stabbed six to seven times, which caused profuse bleeding, required stitches, and still gave him pain at the time of trial. Resp. Ex. B at 173, 183, 232-33, 244, 441. Notably, resolution of this issue does not turn on whether or not the State specifically identified the weapon used but, instead, turns on whether the object used could produce death or great bodily injury. Here, there was sufficient evidence to allow a reasonable juror to conclude that the object Thornton used to stab Waters was capable of producing death or great bodily injury. See Price v. State, 932 So. 2d 1244, 1245 (Fla. 3rd DCA 2006) (affirming conviction for aggravated battery with a deadly weapon and holding "that whether the instrument used to stab the victim was a knife, a screwdriver, or an ice pick is inconsequential where an eyewitness testified that Price used a sharp metallic object to stab the victim repeatedly in the victim's hand and stomach causing the victim to bleed."); Smith v. State, 645 So. 2d 124, 126 (Fla. 1st DCA 1994) ("The state

may prove that a defendant carried, displayed, used, threatened, or attempted to use a weapon during the commission of a felony by means of circumstantial evidence."). In light of the above, there is no reasonable probability the outcome of the trial would have been different had counsel raised this argument in support of the motion for judgment of acquittal. Accordingly, relief on the claim in Ground One is due to be denied.

## B. Ground Two

Next, Thornton argues that his counsel's failure to request an instruction for the necessary lesser-included offense of grand theft constituted deficient performance. Memorandum at 4-6. He maintains that grand theft is a "category one necessarily lesser-included offense" of carjacking and the circuit court was obligated to read the instruction had counsel requested it. Id. at 5. According to Thornton, counsel's failure to request this instruction deprived the jury of the chance to acquit him of the offense of carjacking. Id. at 6.

Thornton exhausted this claim in state court, raising it in his Rule 3.850 Motion. Resp. Ex. R at 9-11. In denying relief on this claim, the circuit court stated:

> "[A]s a matter of law, the possibility of a jury pardon cannot form the basis for finding of prejudice under Strickland." Sanders v. State, 946 So. 2d 953, 960 (Fla. 2006). Therefore, "[a] claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser-included offense may be summarily denied." Id.

> Accordingly, the Court finds that Defendant fails to demonstrate that there was a reasonable probability that the outcome of the proceedings would have been different presuming counsel's performance was deficient. Defendant is not entitled to relief on Ground Two.

Id. at 63. The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. JJ; KK.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. Underlying Thornton's claim of prejudice is the idea that the jury would have found him guilty of grand theft had the instruction been included. However, the jury specifically found that the state proved each element of carjacking beyond a reasonable doubt; therefore, Thornton's prejudice allegation relies solely on the

conceptual possibility of a jury pardon. The possibility of a jury pardon, however, cannot establish prejudice under Strickland. See Strickland, 466 U.S. at 694-95 (noting in determining whether prejudice exists, a court should presume the "jury acted according to the law," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed."); Sanders, 946 So. 2d at 959-60 (holding that although the failure to instruct the jury on a necessarily lesser included offense can be per se reversible error on direct appeal, the mere possibility that the jury might have exercised its "pardon power" "cannot form the basis for a finding of prejudice" to support an ineffective assistance of counsel claim in a postconviction motion). As Thornton cannot demonstrate prejudice, his claim of ineffective assistance of counsel fails. See Ward, 592 F.3d at 1163. Accordingly, relief on the claim raised in Ground Two is due to be denied.

### C. Ground Three

Thornton contends that his counsel was deficient for failing to provide "substantial arguments challenging the sufficiency of the evidence on the second degree arson" charge in his motion for judgment of acquittal. Memorandum at 6-9. Thornton maintains that the State failed to present "any direct evidence that proved beyond a reasonable doubt petitioner willfully and

unlawfully damaged Waters' vehicle by fire." Id. at 8. Specifically, Thornton

asserts that "[n]o one testified Petitioner's clothing or person had come in

contact with gasoline" or other "ignitable materials" at the time of his arrest

and "there were no eyewitnesses to testify observing petitioner commit arson."

Id.

The record reflects Thornton raised a substantially similar claim in his

Rule 3.850 Motion. Resp. Ex. R at 12-14. The circuit court denied relief, finding:

> Defendant argues counsel was ineffective for failing to properly move for judgment of acquittal as to the Second Degree Arson charge. To establish a prima facie case for Second Degree Arson, the State must introduce evidence that (1) Defendant, or a person he was a principal with, caused to be damaged or damaged a vehicle owned by Waters by fire, (2) the damage was done willfully and unlawfully, (3) and the vehicle was a structure. See Fla. Stat. § 806.01 (2009), Fla. Std. Jury Instr. (Crim.) 12.2 (2009).
>
> Here, Robert Jenkins ("Jenkins"), a detective for the State Fire Marshal's Office, testified that a burned 1988 Mitsubishi 3000 GT belonging to Waters was discovered on March 19, 2009. He further testified that it was believed that the origin of the fire was the rear seat of the vehicle. Testimony was also introduced that samples from the rear seat indicated that gasoline was used to make the fire burn faster.
>
> Additionally, Waters testified about the discussion between Defendant and Co-defendant about burning the vehicle and possibly Waters in order to destroy the evidence. Further, Waters testified that Defendant and Co-defendant discussed where they should get gas. The State introduced as evidence a receipt for the purchase of gas. Finally, Defendant and

> Co-Defendant were apprehended walking down the street about one quarter of a mile from the burning car.
>
> The Court finds there was competent, substantial evidence of second degree arson to submit to the jury for its consideration. Therefore, the Court finds that Defendant fails to demonstrate that counsel's performance was deficient or that there was a reasonable probability that the outcome of the proceeding would have been different presuming counsel's performance was deficient. Defendant is not entitled to relief on Ground Three.

Id. at 63-64 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Resp. Exs. JJ; KK.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Three is without merit. "A criminal defendant is entitled to a judgment of acquittal if there is no direct evidence of guilt and

if the circumstantial evidence does not exclude every reasonable hypothesis of innocence." State v. Sims, 110 So. 3d 113, 115 (Fla. 1st DCA 2013) (citation omitted). While there may not have been direct evidence showing Thornton started the fire, the circumstantial evidence presented excludes any reasonable hypothesis of innocence.

As the postconviction court noted, Waters testified that, while Thornton drove Waters' car with Waters tied up in the backseat, he overheard Thornton and his co-defendant, Lisa Mullis, discuss burning the vehicle, and potentially Waters in it, in order to destroy the evidence. Resp. Ex. B at 235-36. Waters further testified that the vehicle came to a stop and Thornton exited specifically looking for gasoline to light the vehicle on fire. Id. at 240. Waters escaped prior to Thornton returning. Id. at 241-43. A detective with Florida's Fire Marshal's Office testified that Waters' vehicle had been burned in the interior, specifically in the area where Waters was detained, the rear seat. Id. at 370-71. Samples from the rear seat were analyzed and found to contain gasoline. Id. at 372-73, 380. Law enforcement detained Thornton and Mullis on the same day of the incident walking away from the scene, which was only a quarter of a mile away. Id. at 395-400. Notably, the State also introduced evidence that Thornton bought one-dollar of gas the night of the incident. Id. at 384-86.

Based on this record, there was sufficient circumstantial evidence to send the arson charge to the jury. Any motion for judgment of acquittal raising the arguments Thornton advances here would have been meritless. Counsel cannot be deficient for failing to raise a meritless argument. See <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Likewise, as Thornton's arguments lack merit, there is no reasonable probability the outcome of the trial would have been different. As Thornton has failed to establish deficient performance or prejudice, relief on the claim in Ground Three is due to be denied.

## D. Ground Four

In Ground Four, Thornton asserts that his counsel provided deficient performance when she failed to object to the prosecutor's improper and prejudicial comments during closing arguments. Memorandum at 9-12. According to Thornton, the State bolstered the testimony of Waters, <u>id.</u> at 9-10, misrepresented the testimony of Detective Adam Graff concerning evidence he gathered during his canvas of the scene, <u>id.</u> at 10-11, and impermissibly attacked the defense's theory and defense counsel, <u>id.</u> at 11-12.

Thornton raised a similar claim in state court. Resp. Ex. R at 15-17. In denying relief on this claim, the circuit court explained:

> Defendant argues counsel was ineffective for failing to object to improper and prejudicial comments made by the prosecutor during his closing arguments.

> ### 1. Bolstering the Credibility of a Witness

> Defendant alleges the prosecutor improperly bolstered the credibility of Waters. Specifically, Defendant refers to the following statements:

>> The other thing I think is significant about that is no matter how embarrassing or humiliating that must have been to have to admit that, what do you know about James Waters? He told the very first responding deputy that that's what the relationship was. He disclosed it right off the bat. Regardless of what anyone thinks about it, it's one of the first things he said to make sure they knew. I got to tell you this is how I know her. We have a sexual relationship, an intimate relationship where I pay her money for sex. Told them right out of the gates, right off the bat, no matter how humiliating that must have been.

>> [. . . .]

>> They underestimated him. They underestimated the character of James Waters because right out of the gate when he's able to escape and get away he's clean upfront. This is what it was. This is how I know it. I'm not going to lie about it. I'm going to tell you what it was.

[. . . .]

> They say we don't have to tell you any reason why he would make all this up. Well, if someone if [sic] going to lie it's common sense that someone is going to lie for a reason. What in the world kind of reason could be behind James Waters wanting to subject himself to this? What in the world? Talk about something not making sense.

. . . .

Here, when the statements are viewed in their context, the prosecutor did not vouch for the credibility of the witness. The prosecutor did not place the prestige of the government behind the witness or state information that was not presented to the jury supported [sic] the witness's testimony. The prosecutor was simply encouraging the jurors to evaluate Waters' credibility based on the evidence presented during trial.

Therefore, the Court finds that Defendant fails to demonstrate that counsel's performance was deficient or that the outcome of the proceeding would have been different had counsel objected to the prosecutor's statements. Defendant is not entitled to relief on this issue.

## 2.      Misrepresentation of Facts

Defendant alleges the prosecutor improperly misrepresented certain facts during his closing arguments. Specifically, Defendant refers to the following statements:

> He's walking down by the road less than a quarter mile from there keeping [sic] their

groceries, groceries bought with stolen money with blood on it. . .

[. . . .]

When Detective Graff was doing the canvas Ms. Bedell elicited from him what it was that he found out and there was someone that said someone had come up to their house and that person had blood on them and I sent them away, black male. That's not James Waters. That's the guy looking for a gas can. That's the guy who got out of the car in the Forman Circle area and is walking up to a house. That's the testimony. That's the evidence. Darrell Thornton got out of the car and walked up to the house and that black male had blood on him and that person told Graff I sent him away. I told him to leave. It was him. It was him looking for a gas can.

. . . .

Defendant Graff testified that, while canvassing the neighborhood where Waters escaped, he spoke with an individual at a home and the individual stated that a black male, who appeared to be bleeding, came to his door. The individual stated however that he told the black male to leave.

Waters had already testified that after Defendant and Co-defendant talked about burning the vehicle and getting gas, Defendant "comes up with an idea" and tells Co-defendant to pull into a driveway. Co-defendant pulled the vehicle into the driveway and Defendant left the vehicle. Defendant was gone for some time. Further, Waters testified that when he escaped he hid amongst the shrubbery but he did not

testify that he made any contact with any person at a home.

The prosecutor's statements were a combination of evidence presented at trial and reasonable logical inferences. Therefore, the Court finds that Defendant has failed to demonstrate that counsel's performance was deficient. Moreover, based on all the evidence presented at trial, Defendant fails to demonstrate that the outcome of the proceedings would have been different had counsel objected to the prosecutor's statements. Defendant is not entitled to relief on this issue.

## 3. Attack Against Defendant's Counsel and Defense Theory

Defendant alleges the prosecutor improperly attacked defense counsel and the defense's theory. Specifically, Defendant refers to the following statements:

> They leave out details but the reality is this: They stand up here at this moment and they create a crazy, outlandish scenario of an attack somewhere else while someone is defending themselves of which there is zero, absolutely zero evidence of. And what you have to do, what they're asking you to do is speculate about that, imagine this other possibility, force a doubt into your mind asking you to speculate about those things . . .

> . . . .

Arguably, the prosecutor's statement that the defense's theory was "crazy" and "outlandish" was improper. However, the Court finds that the prosecutor's statement was harmless giving [sic] the

evidence presented in this case: in particular, Defendant's confession to committing certain acts.

Therefore, the Court finds that Defendant has failed to demonstrate that he failed to receive a fair trial or that the outcome of the proceedings would have been different had counsel objected to the prosecutor's statements. Defendant is not entitled to relief on this issue.

**4.    Inflammatory    and    Other    Improper Statements**

Defendant alleges the following prosecutor's statements are inflammatory:

> He didn't think it was yet over, so from around 1:00 in the morning till around 2:55 a.m. when Deputy Taylor rolls up that terror, that horror, whatever - - however you describe what he went through, that has to be followed by a day of reckoning. It must be followed by a day of reckoning. Hold Darrell Thornton accountable. Hold him responsible for what he did.

Given the wide latitude prosecutors are given to argue to the jury during closing argument, the Court does not find that the prosecutor's statements in this case were inflammatory.

Defendant also alleges the prosecutor's statement, "I want to caution you about one thing: Do not necessarily confuse a trial with necessarily anything to do with innocence" was improper. Defendant argues the statement was improper because it "basically told the jury that [he] was guilty and that the trial itself was a mere formality.

The Court disagrees. Viewed in context, the prosecutor's statement did not tell the jury that Defendant was guilty and the trial was a mere formality. In fact the next statement made by the prosecutor was that "[a] trial is a constitutional right, a right that every person has, a right as we talked about in jury selection that if the state's going to say you're guilty of A, B, C, D and E then the state has to present evidence to back that up." The State properly placed the burden on itself that, through this trial, it had to prove that Defendant was guilty.

Therefore, the Court finds that Defendant has failed to demonstrate that counsel's performance was deficient or that the outcome of the proceedings would have been different had counsel objected to the prosecutor's statements. Defendant is not entitled to relief on this issue.

Id. at 64-69 (record citations omitted). The First DCA affirmed the circuit court's denial of relief without issuing a written opinion. Resp. Exs. JJ; KK.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Four is meritless. For purposes of federal habeas review, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 567 U.S. 37, 45 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The alleged improper comments did not deny Thornton a fair trial. The Court agrees with the state court's analysis that these comments are not improper as the they are reasonable inferences of the evidence presented at trial. Moreover, a review of the trial transcripts shows that the State produced substantial evidence of Thornton's guilt. So much so that even if these comments were considered improper, there is no reasonable probability the outcome of the trial would have been different had they not been spoken.

Waters testified that he paid Mullis for sex over a two-year span. Resp. Ex. B at 206-18. On the night of the incident, he entered into Mullis' home with the understanding that he would pay her for sex. Id. Upon entering her home, Thornton hit Waters on the back of the head with what Waters thought was a gun, causing Waters to fall to the ground. Id. at 217-18. Thornton and Mullis covered their hands with latex gloves and taped Waters' hands with duct tape. Id. at 219-25. Thornton took Waters' wallet and car keys by gunpoint and then Thornton and Mullis commandeered Waters' vehicle, forced Waters into the

back seat, and drove to a bank to use Waters' ATM card to withdraw $300 in cash. Id. at 219-31. Mullis and Thornton, still in control of Waters' vehicle, drove to a convenience store, at which Mullis bought some items. Id. at 232. While Mullis was inside the store, Thornton stabbed Waters six to seven times with an unidentified object, causing Waters to bleed profusely. Id. at 232-33. Once Mullis returned to the vehicle, she and Thornton discussed burning the vehicle and possibly Thornton in it in order to cover up their crimes, at which point Mullis turned around and stabbed Waters with the same weapon Thornton used. Id. at 235-38. Waters began to "play dead." Id. at 238-40. With Thornton unsure if Waters was dead, he directed Mullis to stop the vehicle so he could obtain some gasoline. Id. While Thornton was away, Waters was able to free his hands of the tape and escape the vehicle, after which he initially hid in the woods until he saw them drive away in his vehicle. Id. at 241-43. Waters then ran to the nearest open business, a Hardee's restaurant. Id. Police arrived and took Waters to a hospital. Id. at 244.

During the investigation, Waters identified Mullis out of a photo lineup and did the same with Thornton, although Waters wrote on the picture that he was only seventy percent sure Thornton was the assailant. Id. at 246-51, 357-59. Police found Waters' vehicle, partially burning from the inside out, which was later determined to have been started with gasoline in the rear seat of the vehicle. Id. at 369-73, 380. A canvas of the area surrounding the vehicle

uncovered apparent blood droplets around the scene and latex gloves that appeared to have been rolled off the hand with what appeared to be a blood-like substance on them. Id. at 420-21, 446-47. The gloves were later analyzed, and it was determined that Mullis and Waters' DNA were on the gloves. Id. at 592-501. Investigators also found pieces of duct-tape that had a blood-like substance on them. Id. at 441-44. Police interviewed three people near the scene, one said she heard yelling and a car drive off and another man said he observed a black male, who appeared to be bleeding, come to his house but he told the man to leave. Id. at 427. Notably, Waters testified the only place he went to after the incident was the Hardee's. Id. at 243. Approximately a quarter of a mile from the burning car, police located Thornton and Mullis walking along the side of the road. Id. at 394-400. An officer testified that Thornton seemed shocked and extremely nervous when they stopped him. Id. at 394-400. Police obtained receipts and other information from two local gas stations, showing that Thornton and Mullis bought beer (Colt and Natural Ice), cigars and cigarettes, and $1.00 worth of gas. Id. at 384-86, 421-26. Of import, a partially burnt Natural Ice beer can was found in the vehicle. Id. at 449-50.

Once transported to the station, police interviewed Thornton and Mullis. Id. at 525-27, 562-78. Following their interview with Mullis, police drove with her to a hotel where she and Thornton were staying. Id. at 531-32. At the hotel, Mullis showed police where they had hidden the gun, which was actually a BB

gun designed to look like a real firearm, and Waters' cellphone. Id. at 531-33, 543-44, 547-50, 634. Inside Thornton and Mullis' hotel room, police found cigars and Natural Ice beer cans. Id. at 550-52. During the interview with Thornton, he confessed to planning to lure Waters to Mullis' residence and robbing and injuring Waters. Id. at 570-75.

Based on this extensive evidence of Thornton's guilt, it cannot be said that the prosecutor's comments, even if for the sake of argument they were improper, so tainted the trial as to prevent Thornton from getting a fair proceeding. An eyewitness gave extensive testimony of Thornton's involvement and identified Thornton in court and out of court. The forensic evidence substantiated Waters' testimony and incriminated Thornton. Moreover, Thornton confessed. In light of this record, there is no reasonable probability the outcome of the trial would have been different had these comments never been made. As Thornton has failed to establish either deficient performance or prejudice, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

Thornton contends that his counsel was ineffective for failing to seek interrogatories on the verdict form to allow the jury to choose whether the deadly weapon was a BB gun, a knife, or both. Memorandum at 12-13. Additionally, he asserts that his counsel should have objected to his conviction for robbery with a deadly weapon on the grounds that the jury did not make

the proper finding. Id. According to Thornton, counsel should have requested the interrogatory "because there was no clear distinction whether the jury's decision met the qualifications of a deadly weapon by statute." Id. at 13. Thornton maintains that the absence of the interrogatory "negated a critical element that elevated the severity of punishment from fifteen to thirty years," and "precluded argument as to whether the BB gun or knife qualified as a deadly weapon by fact and law." Id.

In his Rule 3.850 Motion, Thornton raised a substantially similar claim. Resp. Ex. R at 18-20. The circuit court denied relief on this claim, finding:

> Defendant argues counsel was ineffective for failing to object to an increased penalty without the proper jury finding. Specifically, Defendant alleges there was no specific finding made by the jury as to whether the BB gun or the knife/unidentified object was the deadly weapon. As such, without the finding, Defendant surmises that he could only be sentenced to a second degree felony of simple robbery.
>
> The Court finds Defendant's argument without merit. First, the jury was given the opportunity to convict Defendant of simply robbery and found that the evidence proved beyond a reasonable doubt that Defendant committed robbery with a deadly weapon. Second, no specific jury finding was necessary to convict Defendant. It was immaterial whether the jury found the BB gun, the knife, or both as a deadly weapon.
>
> Therefore, the Court finds that Defendant has failed to demonstrate that counsel's performance was deficient or that the outcome of the proceedings would

have been different. Defendant is not entitled to relief on Ground Five.

Id. at 69 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. Resp. Exs. JJ; KK.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Thornton is not entitled to relief on the basis of this claim.

Even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Five is without merit. As discussed above, if during the commission of a robbery the offender "carried a firearm or other deadly weapon," then the robbery is a first-degree felony punishable by life. § 812.13(2)(a), Fla. Stat. If the offender only carried a "weapon," then the robbery would be a first-degree felony punishable up to thirty years in prison. § 812.13(2)(b), Fla. Stat. If a defendant did not carry any weapon, then the robbery would be a second-degree felony punishable up to fifteen years in

prison. § 812.13(2)(c), Fla. Stat. Thus, the key element enhancing the punishment for robbery is whether there is a firearm or deadly weapon, a weapon, or no weapon at all. See Mashburn v. State, 745 So. 2d 453, 454 (Fla. 5th DCA 1999) ("Whether the weapon is a 'firearm or other deadly weapon' or simply a 'weapon' determines the level of the offense for scoring purposes.").

Here, the State charged Thornton with robbery with a deadly weapon. Resp. Ex. A at 7-8. The Verdict form included specific interrogatories asking the jury to choose whether Thornton committed the robbery with a deadly weapon, a weapon, or no weapon at all. Id. at 34. As such, the verdict properly included interrogatories on each of the potential elements that could enhance the penalty for Thornton's robbery conviction. See Mashburn, 745 So. 2d at 454. Moreover, as explained in greater detail above, the State presented sufficient evidence for a reasonable jury to conclude that either the BB gun or the object used to stab Waters could be a deadly weapon. As either the BB gun or unidentified knife-like weapon could have supported a finding that Thornton carried a deadly weapon, asking the jury to specifically determine which object they relied on in concluding Thornton carried a deadly weapon would not have changed the outcome of the trial. Accordingly, Thornton has failed to establish either deficient performance or prejudice. Therefore, the claim for relief in Ground Five is due to be denied.

## F. Ground Six

As Ground Six, Thornton argues that his counsel failed to challenge the introduction through law enforcement witnesses Sara Taylor and Matthew Edmonson of impermissible prior consistent statements Waters made. Memorandum at 15-16. According to Thornton, introduction of Waters' prior statements impermissibly bolstered the credibility of Waters' trial testimony. Id. at 16.

Respondents contend this claim is unexhausted. Response at 65-79. In the Memorandum, Thornton concedes he failed to exhaust this claim, but contends the Court should address the merits under Martinez v. Ryan. Memorandum at 14-15. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss

> of a "substantial" ineffective-trial-counsel claim. <u>Id.</u> at
> 14, 132 S.Ct. at 1318; <u>see also</u> <u>Arthur v. Thomas</u>, 739
> F.3d 611, 629 (11th Cir. 2014) (setting forth the
> <u>Martinez</u> requirements).

<u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). A

claim is substantial if it "has some merit." <u>Martinez</u>, 566 U.S. at 14. For

purposes of determining whether postconviction counsel was ineffective, a

petitioner "must show more than the mere fact they failed to raise potentially

meritorious claims; he must show that <u>no competent counsel</u>, in the exercise of

reasonable professional judgment, would have omitted those claims." <u>Hittson</u>

<u>v. GDCP Warden</u>, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

Upon review, the Court finds that this is not a "substantial" claim. First,

any objection would have been meritless, because the circuit court ruled the

door had been opened to this testimony. During Taylor's testimony, the

prosecutor objected to defense counsel asking questions about what Waters

told Taylor but the trial court overruled the objection. Resp. Ex. B at 185. Once

the defense asked questions related to what Waters had told Taylor, the State,

to provide context and completeness to the cherry-picked comments elicited on

cross-examination, entered into evidence everything Waters told Taylor. <u>Id.</u> at

194-97. The prosecutor did the same on redirect during Edmonson's testimony.

<u>Id.</u> at 623-30. Any objection; therefore, would have been fruitless. Counsel

cannot be deemed deficient for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

Moreover, Thornton cannot demonstrate prejudice. As Thornton states in the Memorandum, Waters testified to these same facts during trial. Therefore, Taylor and Edmonson's testimony concerning what Thornton told them was merely cumulative to other evidence presented to the jury. The State, as explained above, presented substantial evidence of Thornton's guilt, including Thornton's confession. In light of the amount of incriminating evidence against Thornton, there is no reasonable probability the outcome of the trial would have been different had counsel objected to the introduction of Waters' prior statements. Accordingly, this claim is not a "substantial" one such that Thornton should be excused for failing to exhaust. In light of the above analysis, relief on the claim in Ground Six is due to be denied.

## G. Ground Seven

According to Thornton, his counsel was deficient for failing to object to the admission of the BB gun, tape, latex gloves, and photographs of possible blood and shoe prints where the State failed to establish sufficient evidence linking these items to Thornton's commission of the charged offenses. Memorandum at 17-19. Respondents argue, Response at 65-79, and Thornton concedes, Memorandum at 14-15, that Thornton did not exhaust this claim in state court. However, Thornton contends that his failure to exhaust should be

excused pursuant to Martinez. Memorandum at 14-15. As such, the Court considers whether this claim is a "substantial" claim such that Martinez would apply to excuse the default.

The record refutes Thornton's allegations that the State failed to connect the BB gun, tape, latex gloves, and photographs to his commission of the offense. As explained above, Waters testified Thornton had a gun and Mullis led police to the gun, which was actually a BB gun. This evidence shows a connection between the BB gun and Thornton's commission of the offenses. Likewise, Waters testified that Thornton and Mullis wore latex gloves and used tape to secure his hands. Finding used gloves and tape at the scene of the crime corroborates Thornton's testimony. Similarly, the picture of the boot print and blood aligns with Waters' testimony that Thornton stabbed him six to seven times and Waters escaped from the vehicle. The boot print and blood at the scene again corroborates Waters' version of events. As each piece of evidence was linked to Thornton via Waters' testimony, any objection on the grounds that these items were irrelevant would have been meritless. Counsel is not deficient for failing to raise a meritless issue. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, this claim is not substantial, and Thornton cannot rely on Martinez to excuse his failure to exhaust. Relief on the claim in Ground Seven is due to be denied.

## H. Ground Eight

Last, Thornton contends that his counsel rendered deficient performance when she failed to object and move for a mistrial when the State introduced a non-testifying co-defendant's hearsay statements that led police to inculpatory evidence against Thornton. Memorandum at 20-21. Thornton maintains that the State elicited testimony from Detective Kenneth West that included hearsay statements Mullis made to him during the investigation. Id. According to Thornton, introduction of these statements violated his right to confront witnesses where he was not allowed to cross-examine Mullis due to the fact she invoked her right not to testify at their joint trial. Id. Thornton argues that these statements "created the inference that there existed evidence the jury was not privy to." Id. at 21.

Respondents maintain this claim is unexhausted. Response at 65-79. Thornton admits he did not raise this claim in state court but contends the Court should address the merits of the claim under Martinez. Memorandum at 14-15. This claim is not a substantial claim because Thornton cannot demonstrate prejudice. Between Waters' testimony and Thornton's confession, there is no reasonable probability the outcome of the trial would have been different had West never testified. As Thornton cannot demonstrate prejudice, his claim of ineffective assistance of counsel fails. Therefore, this claim is not substantial and cannot be a basis for relief.

# VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Thornton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Thornton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Thornton appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of May, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

47

Jax-8

C:     Darrell Thornton #132646
       Counsel of record